F I L E D
 Clerk
 District Court
APR 10 2020
for the Northern Mariana Islands
By_____
         (Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

JOHN GERALD CASTRO PANGELINAN,

 Petitioner,

v.

UNITED STATES OF AMERICA,

 Respondent.

Case No. 1:19-cv-00015

**DECISION AND ORDER DENYING PETITIONER'S MOTION TO VACATE SENTENCE**

## I. INTRODUCTION

Petitioner John Gerald Castro Pangelinan is a federal prisoner serving consecutive sentences imposed in this District in 2005; 169 months for Hobbs Act robbery conspiracy, and 120 months for using and carrying a firearm during a crime of violence. Pangelinan now challenges the 120-month sentence—the sole count for which he now remains incarcerated—in light of the recent U.S. Supreme Court decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). For the following reasons, this Court denies his motion.

## II. PROCEDURAL BACKGROUND

On July 26, 2019, Pangelinan prepared a *pro se* motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(f)(3). (Motion, ECF No. 1).[1] The Court screened the petition under 28 U.S.C. § 1915A and ordered the government to respond (ECF No. 4). After reviewing the government's response (ECF No. 10), the Court appointed counsel to represent

---

[1] Because Pangelinan previously filed two habeas corpus motions to vacate the same sentence, this Court referred his application for authorization to file this motion to the United States Court of Appeals for the Ninth Circuit, as required by federal statute. (ECF No. 2.) The Ninth Circuit granted the application. (ECF No. 3.)

Pangelinan (ECF No. 12).[2] Pangelinan subsequently filed a brief in support of his motion (ECF No. 19), the government filed an opposition (ECF No. 20), and Pangelinan filed a reply (ECF No. 21). Pursuant to Local Rule 7.1(a)(2), the Court exercises its discretion to decide the motion without oral argument. Accordingly, the motion hearing set for April 14, 2020 at 8:30 a.m. is VACATED.

### III.    FACTUAL BACKGROUND

Shortly after midnight on April 29, 2004, Pangelinan and two accomplices stole a Toyota Camry and agreed to rob a Saipan poker machine parlor.[3] The three men then drove to the parlor, and Pangelinan went in armed with a rifle. Inside the parlor, a security guard and cashier were behind the window of a cashier's booth. Brandishing his rifle, Pangelinan ordered the security guard to open the door to the cashier's booth. The security guard gripped the inner doorknob, attempting to comply. At the same moment, however, Pangelinan fired his rifle at the outer doorknob and shot the security guard in the hand. Pangelinan next fired a second round at the door, which struck the cashier in the arm. At this point, Pangelinan went back to the stolen Camry and fled the scene. Though police officers chased after the Camry, the trio evaded their pursuers and abandoned the car in the jungle.

On May 1, 2004, Pangelinan surrendered to police after learning he was wanted in connection with the attempted robbery. Pangelinan was denied bail but managed to escape from custody on August 31, 2004. He remained at large until being apprehended on September 7, 2004.

---

[2] The Court initially appointed Joseph Horey, but subsequently added David Banes to serve as lead attorney. Mr. Banes is a law firm partner of Mr. Horey and an active member of the Court's CJA panel of criminal defense attorneys.

[3] This narrative comes from the original presentence investigation report that the Probation Office prepared, was not objected to by the parties, and adopted by the Court at sentencing. (Transcript of Sentencing Proceeding at 16, *United States v. John G. Pangelinan and Daniel M. Quitugua,* 1:04-cr-00018 (D. N. Mar. I. Apr. 8, 2020), ECF No. 195.)

Two days later, a grand jury in this District returned a second superseding indictment charging Pangelinan with (1) conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951(a); (2) attempted Hobbs Act robbery, also in violation of Section 1951(a); (3) discharging a firearm during a crime of violence in violation of 18 U.S.C. §§ 2 and 924(c); and (4) escape from federal custody in violation of 18 U.S.C. § 751(a). (Second Superseding Indictment, *United States v. John G. Pangelinan and Daniel M. Quitugua,* 1:04-cr-00018 (D. N. Mar. I. Sep. 9, 2004), ECF No. 34.) Pangelinan entered into an agreement with the government to plead guilty to Counts I, III, and IV of the second superseding indictment, in exchange for dismissal of Count II. (Plea Agreement, *Pangelinan*, 1:04-cr-00018, ECF No. 44.) The Court accepted Pangelinan's change of plea. (Minute Entry, *Pangelinan*, 1:04-cr-00018, ECF No. 47.) On June 3, 2005, the Court sentenced him to a term of imprisonment as follows: "As to Count I: 169 months to run concurrent to Count IV and consecutive to Count III; As to Count III: 120 months to run consec[u]tive to Count I and concurrent to Count IV; As to Count IV: 60 months to run concurrent to Counts I and III." (Judgment, *Pangelinan*, 1:04-cr-00018, ECF No. 54.)[4] Pangelinan did not directly appeal any aspect of his conviction or sentence. Pangelinan has, however, collaterally attacked his sentence three times previously.[5] The Court denied relief each time.[6] On November 20, 2019, the

---

[4] Judgment was later amended solely to make restitution joint and several with the co-defendant. (Amended Judgment, *Pangelinan*, 1:04-cr-00018, ECF No. 57.)

[5] Motion Under 28 U.S.C. § 2255, *Pangelinan v. United States*, Case No. 13-cv-00011 (D. N. Mar. I. Apr. 9, 2013), ECF No. 1; Motion to Correct Error [under] Fed. R. Civ. P. 60(a), *United States v. Pangelinan*, Case No. 04-cr-00018 (Mar. 18, 2015), ECF No. 104; Motion Requesting Appointment of Legal Representation and the Granting of a Resentencing Hearing, *Pangelinan v. United States*, Case No. 16-cv-00011 (D. N. Mar. I. March 29, 2016), ECF No. 1.

[6] Order of Dismissal, *Pangelinan v. United States*, Case No. 13-cv-00011 (D. N. Mar. I. Nov. 19, 2013), ECF No. 3; Order Denying Defendant's Motion to Correct Error, *United States v. Pangelinan*, Case No. 04-cr-00018 (Mar. 24, 2015), ECF No. 105; Order Denying Motion for Appointment of Counsel and resentencing Hearing, *Pangelinan v. United States*, Case No. 16-cv-00011 (D. N. Mar. I. Mar. 9, 2017), ECF No. 12.

Ninth Circuit authorized Pangelinan to file this fourth motion. (USCA Order, ECF No. 3.) *See* 28 U.S.C. § 2255(h).

Pangelinan asserts that the Supreme Court's recent decision in *United States v. Davis*, 139 S. Ct. 2319 (2019), invalidated his conviction on Count III for discharging a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). (Motion at 11.) In response, the government argues that the petition is both meritless and procedurally barred. (Response, ECF No. 10 at 4–8.)

### IV.   LEGAL STANDARD

Federal prisoners may file a motion to vacate any sentence "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). When a prisoner seeks relief according to a right "newly recognized by the Supreme Court and made retroactively applicable," a one-year statute of limitations applies. 28 U.S.C. § 2255(f)(3). That one-year period begins on the date "the right asserted was initially recognized by the Supreme Court." *Id.* The method for handling individual motions under section 2255 is left to the district court's discretion. *Shah v. United States*, 878 F.2d 1156, 1159 (9th Cir. 1989).

### V.   DISCUSSION

The Hobbs Act criminalizes robbery that "in any way or degree obstructs, delays, or affects commerce." 18 U.S.C. § 1951(a). Attempting or conspiring to commit Hobbs Act robbery is penalized the same as a completed robbery. *Id.* Additionally, carrying a firearm during a predicate "crime of violence" is a separate offense imposing a mandatory sentence on top of any sentence for the predicate offense. 18 U.S.C. § 924(c). Before *Davis*, a predicate offense could qualify as a crime of violence under two separate clauses. The first, the "elements clause," includes any felony offense that "has as an element the use, attempted use, or threatened use of

physical force against the person or property of another." § 924(c)(2)(A). "[T]he phrase 'physical force' requires violent force—that is, force capable of causing physical pain or injury to another person." *United States v. Fultz*, 923 F.3d 1192, 1194 (9th Cir. 2019) (internal quotation marks omitted). The second clause, the "residual clause," included any felony "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." § 924(c)(2)(B).

Courts assess whether a felony qualifies as a crime of violence "in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) (quoting *Begay v. United States*, 553 U.S. 137, 141 (2008)). This is called the "categorical approach." *Id.* Under this approach, the court cannot "look to the particular facts" of the case at hand. *United States v. Benally*, 843 F.3d 350, 352 (9th Cir. 2016). Instead, the court asks whether the statute defining the offense "punishes any conduct not encompassed by the statutory definition of a crime of violence." *Id.* Courts also use a modified categorical approach to divide a single criminal statute into multiple offenses, some of which may be considered crimes of violence even while others are not. *Descamps v. United States*, 570 U.S. 254, 257 (2013). To be divisible, a statute must contain "multiple, alternative elements of functionally separate crimes." *United States v. Dixon*, 805 F.3d 1193, 1198 (9th Cir. 2015).

The Hobbs Act is a divisible statute; although actual robbery, attempted robbery, and conspiracy to commit robbery all violate Section 1951(a), they are separate offenses under the modified categorical approach. *See United States v. Soto-Barraza*, No. 15-10586, 2020 WL 262989, at *1 (9th Cir. Jan. 17, 2020) (treating conspiracy to commit Hobbs Act robbery as a

discrete offense for purposes of section 924(c)). Therefore, courts separately evaluate each offense to determine whether it is a crime of violence.

In *Davis*, the Supreme Court struck down the residual clause of the firearms statute as unconstitutionally vague. 139 S. Ct. at 2336. As the Court explained, vague laws threaten separation of powers by "hand[ing] responsibility for defining crimes to relatively unaccountable police, prosecutors, and judges, eroding the people's ability to oversee the creation of the laws they are expected to abide." *Id.* The residual clause's definition of a crime of violence was consequently invalid because "the imposition of criminal punishment can't be made to depend on a judge's estimation of the degree of risk posed by a crime[.]" *Id.* at 2326. It also violated due process by denying the public "fair notice of what the law demands of them." *Id.* at 2325. This ruling overturned the Ninth Circuit's 26-year-old decision in *United States v. Mendez*, 992 F.2d 1488 (9th Cir. 1993), that conspiracy to commit Hobbs Act robbery is a predicate crime of violence under the residual clause. Now, to predicate a section 924(c) firearm conviction, an offense must categorically satisfy the elements clause's definition of a crime of violence. *Davis*, 139 S. Ct. at 2326.

*Mendez*, however, was controlling precedent when the Court sentenced Pangelinan in 2005. Thus, at that time, the first count Pangelinan pled guilty to—conspiracy to commit Hobbs Act robbery—was a predicate crime of violence under the residual clause. *Mendez*, 992 F.2d at 1491. Of course, because *Davis* struck down the residual clause and applies retroactively, this previous justification for Pangelinan's section 924(c) conviction is no longer valid. Pangelinan therefore argues that *Davis* created a newly recognized right requiring the Court to vacate his section 924(c) firearm conviction.

6

The government does not dispute that, post-*Davis*, Hobbs Act conspiracy is no longer a predicate offense under Section 924(c), as it does not fall within the elements clause. (Response at 4–5.) Nor does the government dispute that Pangelinan satisfied the statute of limitations, having filed his petition less than one year after the Supreme Court decided *Davis*. (*Id.* at 4.) The government does, however, present two arguments against granting Pangelinan's petition. First, the government claims that Pangelinan's petition is procedurally barred as he did not file a direct appeal after sentencing. (*Id.* at 6.) Second, turning to the petition's merits, the government argues that Count II of the second superseding indictment—attempted Hobbs Act robbery—also predicated Pangelinan's firearm conviction and remains a crime of violence under the elements clause after *Davis*. (*Id.* at 5.)

 1. *Pangelinan's Procedural Default*

"Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (internal quotation marks omitted). Pangelinan did not appeal his original sentence and does not claim actual innocence. Therefore, his section 2255 motion is procedurally defaulted absent a showing of cause and prejudice.

   a. Pangelinan's Showing of Cause

A defendant has cause for not raising a claim on direct appeal where "the factual or legal basis for [the] claim was not reasonably available to counsel" at the time. *Strickler v. Greene*, 527 U.S. 263, 283 n.24 (1999). A claim was not reasonably available if it is based on a Supreme Court decision that "overturn[s] a longstanding and widespread practice to which [the Supreme] Court has not spoken, but which a near-unanimous body of lower court authority has expressly

7

approved." *Reed v. Ross*, 468 U.S. 1, 17 (1984). When Pangelinan was sentenced in 2005, *Mendez*, a binding Ninth Circuit precedent, held that conspiracy to commit Hobbs Act robbery was a predicate crime of violence under Section 924(c)'s residual clause. 992 F.2d at 1491. Furthermore, *Mendez* was hardly an aberration. As the Government acknowledges in its response, Pangelinan was sentenced at a time when "cases uniformly [held] that a Hobbs Act conspiracy constitutes a 'crime of violence'" under Section 924(c). *United States v. Merlino*, 204 F. Supp. 2d 83, 86 (D. Mass. 2002), *rev'd in part on other grounds*, 592 F.3d 22 (1st Cir. 2010). The government nevertheless asserts that this widespread case law, including a binding precedent, proves that the opposite argument was not a novel one. (ECF No. 10 at 7–8.) Therefore, the government reasons, Pangelinan should have thought to raise it on direct appeal. (*Id.*) In support, the Government relies on language from *Bousley* that a constitutional claim was not "so novel that its legal basis is not reasonably available" where "the Federal Reporters were replete with cases" addressing similar arguments. 523 U.S. at 622. Pangelinan's motion, however, is distinguishable because it involves a claim that by 2005 was universally rejected. Because *Davis* overturned the longstanding and widespread practice of treating conspiracy to commit Hobbs Act robbery as a predicate crime of violence, it established a new constitutional claim that was not reasonably available to Pangelinan at his 2005 sentencing. Therefore, Pangelinan had cause for failing to appeal his original sentence.

      b. Prejudice

Prejudice requires proof that the absence of a previously unavailable claim worked to a defendant's "*actual* and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982). Here, the Court must determine whether predicating Pangelinan's firearm conviction on the conspiracy count worked to his substantial disadvantage. Consequently, the question of

prejudice turns on the merits of Pangelinan's motion. *See Fernandez v. United States*, No. CR 99-0083-DOC-1, 2018 WL 6137605, at *4 (C.D. Cal. Feb. 12, 2018) ("the Court must reach the merits of Petitioner's habeas claim to determine whether he has overcome procedural default"); *United States v. Armstrong*, No. C 09-2243 PJH, 2012 WL 712126, at *10 (N.D. Cal. Mar. 5, 2012) ("the prejudice prong is intertwined with the merits").

   *2. Merits*

   The threshold issue is whether Pangelinan could have pleaded guilty to discharging a firearm during an attempted Hobbs Act robbery if he did not plead guilty to the related charge of attempted Hobbs Act robbery. Pangelinan argues that he did not, and that he only pled guilty to discharging a firearm during a Hobbs Act conspiracy. (Brief in Support of Motion, ECF No. 19 at 6–9.) As part of Pangelinan's agreement with the government, the only section 1951(a) violation that he pleaded guilty to was Hobbs Act conspiracy. (Plea Agreement, *Pangelinan,* 1:04-cr-00018, ECF No. 44.) In exchange, the count of attempted Hobbs Act robbery was dismissed. (Transcript of Sentencing Proceeding at 28, *Pangelinan,* 1:04-cr-00018, ECF No. 195.) However, a defendant can plead guilty to violating section 924(c) without also pleading guilty to the predicate crime of violence. *United States v. Hunter*, 887 F.2d 1001, 1003 (9th Cir. 1989) ("a defendant charged with violating section 924(c)(1) must be proven to have committed the underlying crime, but nothing in the statute or the legislative history suggests he must be separately charged with and convicted of the underlying offense"). Although a defendant need not plead guilty to the predicate offense, they must still admit to having committed it. *Lopez v. Sessions*, 901 F.3d 1071, 1075 (9th Cir. 2018).

   To determine whether a defendant admitted to committing the predicate offense, a court looks to "the terms of a plea agreement or transcript of colloquy between judge and defendant in

which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 26 (2005)). Pangelinan and the Court had the following colloquy at his change of plea hearing on March 2, 2005:

> The Court: Tell me in your own words what it is that you did that you want to enter a plea of guilty to Count 3, using and carrying a firearm during a crime of violence.
>
> Pangelinan: I used the firearm to commit the robbery. I discharged it in the establishment.
>
> The Court: Was that on or about April 29, 2004?
>
> Pangelinan: Yes.
>
> The Court: Here on the island of Saipan?
>
> Pangelinan: Yes.
>
> The Court: You used and carried a firearm and discharged it during the robbery?
>
> Pangelinan: Yes.

(Transcript of Change of Plea Hearing at 30–31, *Pangelinan,* 1:04-cr-00018, ECF No. 47.) Pangelinan argues that, because he was never charged with the completed robbery, it is unclear whether the phrase "during the robbery" referred to the conspiracy or attempt. (Brief in Support of Motion at 8.) The Court disagrees. By confirming the April 29 date, admitting to discharging "it in the establishment," and discharging it "during the robbery," Pangelinan was clearly referring to the attempted robbery. Furthermore, Count 3 of the Superseding Indictment specifically charges Pangelinan of committing the firearm charge in relation to the crime of violence "Hobbs Act Robbery Conspiracy ***and*** Attempted Hobbs Act Robbery." (Second Superseding Indictment at 2, *Pangelinan*, 1:04-cr-00018)(emphasis added). Therefore, although Pangelinan did not plead guilty to attempted Hobbs Act robbery, he did plead guilty to discharging

a firearm during an attempted Hobbs Act robbery. As a result, this case turns on a question of pure statutory interpretation: does attempted Hobbs Act robbery in violation of section 1951(a) satisfy the categorical definition of crime of violence under section 924(c)'s elements clause? In other words, can someone commit attempted Hobbs Act robbery without the "use, attempted use, or threatened use" of violent force? 18 U.S.C. § 924(c)(2)(A).[7]

The Hobbs Act defines "robbery," in relevant part, as taking personal property from another "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property[.]" 18 U.S.C.A. § 1951. Given this language, every Court of Appeals to decide the issue has held that completed Hobbs Act robbery is a crime of violence under the elements clause.[8] But what about *attempted* Hobbs Act robbery?

To commit attempted robbery, a person must have the specific intent to complete the robbery and must take a substantial step toward that end. *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000). A substantial step is "that point [] when a defendant's actions demonstrate that the crime will take place unless interrupted by independent circumstances." *United States v. Soto-Barraza*, 947 F.3d 1111, 1120 (9th Cir. 2020) (internal quotation marks omitted); *see also United States v. Moore*, 921 F.2d 207, 209 (9th Cir. 1990) (finding sufficient evidence of attempted robbery where the defendant walked toward the targeted business with a ski mask and gun). When the intended victim is a business, "courts frequently consider whether

---

[7] The undisputed facts in this case show that what Pangelinan did was certainly violent. However, under the categorical approach, that is entirely irrelevant.

[8] *United States v. Dominguez*, No. 14-10268, 2020 WL 1684084, at *6 (9th Cir. Apr. 7, 2020); *United States v. Mathis*, 932 F.3d 242, 265 (4th Cir. 2019); *United States v. Jones*, 919 F.3d 1064, 1072 (8th Cir. 2019); *United States v. Garcia-Ortiz*, 904 F.3d 102, 109 (1st Cir. 2018); *United States v. Hill*, 890 F.3d 51, 60 (2d Cir. 2018); *United States v. Melgar-Cabrera*, 892 F.3d 1053, 1060 (10th Cir. 2018); *United States v. Buck*, 847 F.3d 267, 275 (5th Cir. 2017); *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017); *United States v. Fox*, 878 F.3d 574, 579 (7th Cir. 2017); *In re Fleur*, 824 F.3d 1337, 1341 (11th Cir. 2016); *see also United States v. Robinson*, 844 F.3d 137, 141–44 (3d Cir. 2016).

11

the defendant approached the targeted building to commit the offense." *Soto-Barraza*, 947 F.3d at 1120. Conversely, if the would-be robbers "did not move toward the targeted [business], but merely conducted surveillance in its vicinity, [they] may not have taken a substantial step." *Id.*

Until two days ago, only the Seventh and Eleventh Circuits had decided whether attempted Hobbs Act robbery falls within the elements clause. Both held that it does, employing the same chain of reasoning: (1) "attempt to commit Hobbs Act robbery requires that [a defendant] intended to commit every element of [completed] Hobbs Act robbery;" (2) "a completed Hobbs Act robbery itself qualifies as a crime of violence;" (3) the elements clause encompasses "attempted use" of force; therefore (4) "attempted Hobbs Act robbery [also] qualifies as a crime of violence[.]" *United States v. St. Hubert*, 909 F.3d 335, 352 (11th Cir. 2018); *see also United States v. Ingram*, 947 F.3d 1021, 1026 (7th Cir. 2020) ("when a substantive offense would be a violent felony under [the elements clause], an attempt to commit that offense also is a violent felony") (quoting *Hill v. United States*, 877 F.3d 717, 719 (7th Cir. 2017)). Notably though, this view is not universally accepted. Dissenting from the Eleventh Circuit's decision not to rehear *St. Hubert en banc*, Judge Jill Pryor, joined by two colleagues, wrote that the panel opinion "made two right turns before it took a wrong turn, but the wrong turn led to a logical and legal dead end." *United States v. St. Hubert*, 918 F.3d 1174, 1211 (11th Cir. 2019) (Pryor, J., dissenting). As Judge Pryor explained, "it is incorrect to say that a person necessarily attempts to use physical force within the meaning of elements clause just because he attempts a crime that, if completed, would be violent." *Id.* at 1212. "We can easily imagine that a person may engage in an overt act . . . without having used, attempted to use, or threatened to use force." *Id.*

District courts outside these two circuits are divided on this issue, with several following Judge Pryor's logic. *See United States v. Tucker*, No. 18 CR 0119 (SJ), 2020 WL 93951, at *6

12

(E.D.N.Y. Jan. 8, 2020) ("an absolute rule [] that an attempt to commit any violent crime will necessarily be itself a violent crime[] seems at odds with the requirements of the categorical analysis in which a court must examine the minimum criminal conduct necessary for conviction under a particular statute") (internal quotation marks omitted); *Lofton v. United States*, No. 604CR06063MATMWP, 2020 WL 362348, at *7 (W.D.N.Y. Jan. 22, 2020) ("Like the district court in *Tucker*, this Court finds Judge Pryor's critique of *St. Hubert II* to be compelling. Significantly, what is missing from *St. Hubert II* is a true application of the categorical approach."); *but see United States v. Romero-Lobato*, No. 318CR00049LRHCBC, 2019 WL 2179633, at *4 (D. Nev. May 17, 2019) ("The Court finds the reasonings of the Eleventh and Seventh circuits to be persuasive and adopts their views herein.").

Importantly, the most recent development occurred just days ago, when a Ninth Circuit panel issued its decision in *United States v. Dominguez*, No. 14-10268, 2020 WL 1684084 (9th Cir. Apr. 7, 2020). In a 2–1 vote, the panel held that attempted Hobbs Act robbery is a crime of violence under the elements clause. *Id.* at *8. The majority opinion states, "we agree with the Seventh and Eleventh Circuits that, when a substantive offense would be a crime of violence under 18 U.S.C. § 924(c)(3)(A), an attempt to commit that offense is also a crime of violence. There is no circuit court decision to the contrary." *Id.* Dissenting from this part of the opinion, Judge Jacqueline Nguyen reasoned that "attempted Hobbs Act robbery does not in fact include violence as an element" and "can be completed without any threatened use or attempted use of force." *Id.* at *11 (Nguyen, J., dissenting in part). "[T]he majority conflates *attempt* and *intent*. Only by substituting 'intended' for 'attempted' does the majority's analysis make sense." *Id.* at *10.

13

Judge Nguyen made an excellent argument for why an attempt to commit a crime of violence need not also fall within the elements clause. In further support of her reasoning for a different result, consider *United States v. Still*, 850 F.2d 607 (9th Cir. 1988), a case involving attempted federal bank robbery.[9] Completed bank robbery is a crime of violence under the elements clause. *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990). Therefore, applying the *Dominguez* panel's majority opinion, one would have to conclude that attempted bank robbery is also a crime of violence under the elements clause. This Court, however, believes that this result is irreconcilable with the Ninth Circuit's earlier decision in *Still*.

The original facts in *Still* were as follows. A lay witness saw a man put on a wig while sitting in a van parked 200 feet from a bank. *Still*, 850 F.2d at 608. The witness then called the police, who quickly arrived and arrested the man. *Id.* The man admitted that he was about to rob the bank. *Id.* Inside the van, police found a fake bomb, a money pouch with a demand letter taped to it, a police scanner, and a notebook. *Id.* The man told police he had planned to pull up to the bank's drive-in window in disguise and place the fake bomb, pouch, and demand letter on the window. *Id.* A federal jury convicted the man of attempted bank robbery, but the Ninth Circuit reversed. *Id.* at 610. The Ninth Circuit held that, although the man had the specific intent to rob the bank, a substantial step required "actual movement toward the bank or actions that are analytically similar to such movement." *Id.* The police, by contrast, arrested the man while his van was parked 200 feet away. *Id.* Thus, the substantial step element was missing. *Id.*

Now consider if the police had arrested the man while he was driving the van up to the window, but before the van came to a halt. The Ninth Circuit indicated in *Still* that it would have

---

[9] A person commits federal bank robbery when the person takes or attempts to take "by force and violence, or by intimidation . . . any property or money or any other thing of value belonging to, or in the care, custody, control, management, or possession of, any bank, credit union, or any savings and loan association." 18 U.S.C. § 2113.

14

upheld the attempted robbery conviction in this scenario, because driving up to the bank was the missing substantial step. 850 F.2d at 610. Consequently, for attempted bank robbery to be a categorical crime of violence, these facts must include the "use, attempted use, or threatened use" of violent force.

Was there any "use" of violent force in this scenario? Clearly not. All the man did was drive and park his van near a bank. What about "attempted use" of violent force? Again, no. The man had only a fake bomb. While he hoped the ruse would scare the bank teller, it was only that—a ruse. Given that the man had no real weapons or plan of going inside the bank, he probably never intended to deploy actual violent force. And as attempt is a specific intent crime, a person only attempts what they intend. Lastly, was there any "threatened use" of violent force? No, there was not. Because the man in this scenario was arrested while still pulling up to the window, he did not have an opportunity to place the fake bomb and demand letter on the window, and the bank teller never saw them. Thus, the man could have consummated the attempt (though not the completed robbery) without threatening anyone.

These facts illustrate how the offense of attempted bank robbery punishes conduct not involving the use, attempted use, or threatened use of violent force. Therefore, attempted bank robbery should fall outside the firearms elements clause. Moreover, because attempted bank robbery is not a crime of violence, the same should be said of attempted Hobbs Act robbery. *See United States v. Stewards*, No. 1:95-CR-05111-LJO-2, 2017 WL 3593702, at *4 (E.D. Cal. Aug. 21, 2017) ("The federal bank robbery statute shares the same essential elements as Hobbs Act robbery.") (citing *United States v. Howard*, 650 F. App'x 466, 468 (9th Cir. 2016), *as amended* (June 24, 2016)). Indeed, because the Hobbs Act criminalizes any robbery interfering with commerce, an attempted bank robbery is technically also an attempted Hobbs Act robbery.

15

Moreover, although the *Still* defendant targeted a bank, he could have alternately targeted the drive-in window of a different business, such as a fast food restaurant. *See Adams v. United States*, No. 08-0957CVWODS, 2009 WL 1576699, at *1 (W.D. Mo. June 3, 2009) (defendant was convicted of Hobbs Act robbery of a fast food restaurant using a fake gun). If the target were any non-banking businesses, then the government would have had to prosecute the defendant under the Hobbs Act instead.

The *Dominguez* opinion adopts the Seventh Circuit's conclusion that "[w]hen the intent element of the attempt offense includes intent to commit violence against the person of another, . . . it makes sense to say that the attempt crime itself includes violence as an element." *Dominguez*, 2020 WL 1684084, at *8 (quoting *Hill*, 877 F.3d at 719). But this overlooks the reality that intent to commit violence is not an essential element of attempted Hobbs Act robbery. In fact, case law is replete with examples of Hobbs Act robbery convictions involving only fake weapons. *See, e.g., United States v. Cordero*, 166 F.3d 334 (4th Cir. 1998) (affirming the Hobbs Act robbery conviction of a defendant who robbed a dollar store using a toy pistol); *United States v. Aponte*, No. 18-CR-00215, 2019 WL 3302378, at *1 (E.D.N.Y. July 22, 2019) (sentencing a defendant for Hobbs Act robbery after he robbed several cab drivers with a fake gun). After all, "[a] willingness to use violent force is not the same as a threat to do so." *United States v. Parnell*, 818 F.3d 974, 980 (9th Cir. 2016). A person may therefore be willing to deceptively threaten violent force yet at the same time unwilling to risk even a possibility of using actual violent force. Where police apprehend this would-be robber while they are approaching their target, but before they have threatened anyone with a ruse, the government may still prosecute them for attempted Hobbs Act robbery. The would-be robber, however, has neither attempted to use nor *yet* threatened to

use violent force against anyone.[10] Consequently, this Court agrees with Judge Nguyen that attempted Hobbs Act robbery can be committed without the attempted use or threatened use of violent force.

Nevertheless, as of today it is the panel's majority opinion, not Judge Nguyen's dissent, that binds this Court. *See In re Zermeno-Gomez*, 868 F.3d 1048, 1052 (9th Cir. 2017) ("a published decision of this court constitutes binding authority which must be followed unless and until overruled by a body competent to do so") (internal quotation marks omitted). Accordingly, the Court must hold that attempted Hobbs Act robbery is a crime of violence under the elements clause. Because Pangelinan's section 924(c) conviction was equally predicated on this offense, *Davis* does not invalidate it.

## VI.    CONCLUSION

For the foregoing reasons, Pangelinan's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255(f)(3) is DENIED. The Clerk of Court is directed to close this case.

IT IS SO ORDERED this 10th day of April, 2020.

/s/ *signature*
RAMONA V. MANGLONA
Chief Judge

---

[10] *United States v. Martinez-Jimenez*, 864 F.2d 664 (9th Cir. 1989), is not relevant here. That case held that a toy gun satisfies the "dangerous weapon" element of an armed bank robbery conviction in violation of 18 U.S.C. § 2113(d). *Id.* at 668. The Ninth Circuit reasoned that even a simulated weapon "creates a likelihood that the reasonable response of police and guards will include the use of deadly force." *Id.* at 667. Therefore, a "robber's creation of even the appearance of dangerousness is sufficient to subject him to enhanced punishment." *Id.* at 666. By contrast, in the hypothetical from *Still*, the defendant did not create even an appearance of dangerous because he was arrested before ever threatening the bank teller with the fake bomb. Furthermore, classifying crimes as violent because they involved only a risk of force was the purpose of the defunct residual clause, not the elements clause. Lastly, the limited holding of *Martinez-Jimenez* involved only an interpretation of section 2113(d). In other circumstances, the law does not equate fake weapons with actual ones. *See United States v. Garrido,* 596 F.3d 613, 617 (9th Cir. 2010) ("Possession of a toy or replica gun cannot sustain a conviction under § 924(c).").

17